OPINION
{¶ 1} Sandra Olivier appeals from a judgment of the Miami County Court of Common Pleas, which granted Leaf Vine's motion for summary judgment on her claims of negligently maintaining a hazardous condition and negligent failure to warn. Oliver also appeals from the court's prior order, which struck a portion of her expert's affidavit.
 {¶ 2} On January 15, 2002, Olivier went to the Leaf Vine restaurant, located at 108 West Main Street in Troy, Ohio, to have lunch. She arrived with her friend, Helen Willis, at approximately 11:45 a.m. As they entered the restaurant, the pair walked between two storefront display areas, encased with floor-to-ceiling glass windows.
 {¶ 3} The hostess seated Olivier and Willis at the table on an elevated platform located in the display area to the right of the entrance. The small raised seating area was approximately ten and three-quarters (10 3/4) inches higher than the restaurant's main seating area. The raised seating area had the same hardwood flooring as the main seating area. There was no handrail, and there were no lights or signs to indicate a change in elevation.
 {¶ 4} Olivier and Willis both stepped up and took their seats. After finishing their meals, Willis stepped down from the raised seating area. When Olivier attempted to step down, she fell and severely injured her left ankle.
 {¶ 5} On October 3, 2003, Olivier filed suit against Leaf Vine, alleging that the restaurant had negligently maintained a hazardous condition by permitting a high step to exist along with deceptive lighting conditions, and had negligently failed to warn her of the hazardous condition. Olivier further alleged that the step violated the building code. The restaurant sought summary judgment on Olivier's claims. Olivier opposed the motion and attached the affidavit of an expert, who opined that Olivier had likely sustained injuries due to the noncompliant height of the platform, the changing lighting conditions caused by the weather, the lack of artificial lighting at the change of elevation, and the lack of visual cues and the darkened area encountered by Olivier when she descended the display area. Leaf Vine filed a motion to strike portions of the expert's affidavit, including his opinions regarding the cause of Olivier's fall and the applicability of various building codes.
 {¶ 6} On September 8, 2004, the trial court struck the expert's opinion as to the cause of Olivier's fall but overruled the motion to strike the expert's opinions regarding the Ohio Basic Building Code ("OBBC"). Two days later, the court granted Leaf Vine's motion for summary judgment, concluding that the step down from the platform was an open and obvious condition.
 {¶ 7} Olivier raises three assignments of error on appeal.
 {¶ 8} "I. The trial court erred as a matter of law by awarding summary judgment in favor of the defendant-appellee after excluding that portion of expert testimony pertaining to the ultimate issue of fact."
 {¶ 9} In her first assignment of error, Olivier claims that the trial court erred in excluding paragraph 18 of the affidavit of her expert, Michael Wright.
 {¶ 10} Whether an individual may testify as an expert is an issue for the trial court to determine pursuant to Evid.R. 104(A), and the court's determination may be overturned only for an abuse of discretion. Statev. Cartwright, Montgomery App. No. 18723, 2002-Ohio-539. In order to be admitted at trial, expert testimony must (1) relate to scientific, technical, or other specialized knowledge; (2) assist the trier of fact to understand the evidence or to determine a fact in issue; (3) be relevant and material to an issue in the case; and (4) have a probative value which outweighs any prejudicial impact. Evid.R. 702, 402, and 403;State v. Daws (1994), 104 Ohio App.3d 448, 462, 662 N.E.2d 805. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703; see Cartwright, supra. Expert testimony is not inadmissible "merely because it goes to an ultimate issue or bolsters the victim's own testimony concerning the same matters." Cartwright,
supra; Evid.R. 704. However, "[i]f the trier of fact can understand the issues and the evidence and arrive at a correct determination, expert testimony is unnecessary and inadmissible." Daws,104 Ohio App.3d at 462-63.
 {¶ 11} Paragraph 18 of Wright's affidavit states:
 {¶ 12} "The Affiant further states, within the realm of reasonable civil engineering probabilities, that Sandra Olivier sustained injury on January 15, 2002, because of defects in the premises as follows: the non-compliance height of platform in the display area, at the elevation change between the display area, and the standard floor, the changing conditions created by the partly sunny day in question, the lack of artificial lighting at the change in elevation, the lack of visual cues and the darkened area encountered by Sandra Olivier as she descended from the platform in the display area, and the lack of a handrail."
 {¶ 13} The trial court excluded this evidence, reasoning:
 {¶ 14} "The deposition testimony of Sandra Olivier establishes she misjudged a step down and fell. The Court doesn't believe such a common human event needs an expert to opine the same to a jury, unless it involved perception-reaction theories or statistics, neither of which this expert will employ. In regard to the issue of causation, the expert adds nothing more than the Plaintiff and his opinion is disregarded to that extent."
 {¶ 15} In our judgment, the trial court did not abuse its discretion when it excluded paragraph 18 of Wright's affidavit. Although the trial court could have concluded that Wright's opinion might have been helpful to a jury, because it was based upon his specialized knowledge of the building codes, structural engineering, safety, and construction safety, it could also have reasonably concluded that the trier of fact could easily determine the cause of Olivier's fall without the aid of his affidavit.
 {¶ 16} The first assignment of error is overruled.
 {¶ 17} "II. The trial court erred as a matter of law by not construing the evidence most strongly in the appellant's favor and by holding that that [sic] the appellee was entitled to summary judgment because the defects in the premises were open and obvious.
 {¶ 18} "III. The trial court erred as a matter of law by applying the open and obvious doctrine when the facts of the case reveal that the injury producing conditions were in violation of the ohio building code, which forbid a step higher than 7 inches and require a handrail."
 {¶ 19} In her second and third assignments of error, Olivier contends that the trial court erred in granting summary judgment to Leaf Vine on the ground that the step was an open and obvious condition. She asserts that the open and obvious doctrine does not apply when the hazardous condition violates the OBBC. She further asserts that the trial court did not construe the evidence in her favor when it applied the open and obvious doctrine. Because the two assignments of error are related, we will address them together.
 {¶ 20} "In Ohio, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owes the entrant." Gladon v.Greater Cleveland Regional Transit Auth. (1996), 75 Ohio St.3d 312, 315,662 N.E.2d 287. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Id.; McManes v. Kor Group, Montgomery App. No. 19550, 2003-Ohio-1763, at ¶ 37. With regard to invitees, a landowner has a duty to exercise ordinary care in maintaining its premises in a reasonably safe condition in order to insure that the invitee is not unnecessarily and unreasonably exposed to danger. Paschalv. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 480 N.E.2d 474;Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611; Kidderv. The Kroger Co., Montgomery App. No. 20405, 2004-Ohio-4261, at ¶ 7. Although a business is not an insurer of its invitees' safety, it must warn them of latent or concealed dangers if it knows or has reason to know of the hidden dangers. Jackson v. Kings Island (1979),58 Ohio St.2d 357, 359, 390 N.E.2d 810.
 {¶ 21} "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability."Adelman v. Timman (1997), 117 Ohio App.3d 544, 549, 690 N.E.2d 1332. A business has no duty to protect an invitee, such as Olivier, from dangers "[that] are known to such invitee or are so obvious and apparent to such invitee that [s]he may reasonably be expected to discover them and protect [her]self against them." Paschal, supra; Kidder at ¶ 7. "`The rationale behind the [open-and-obvious] doctrine is that the open-and-obvious nature of the hazard itself serves as a warning.' The open-and-obvious doctrine concerns the first element of negligence, whether a duty exists. Therefore, the open-and-obvious doctrine obviates any duty to warn of an obvious hazard and bars negligence claims for injuries related to the hazard." Henry v. Dollar General Store, Greene App. No. 2002-CA-47, 2003-Ohio-206, at ¶ 7. The supreme court reaffirmed the viability of the open and obvious doctrine in Armstrong v. Best BuyCo., Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088.
 {¶ 22} As a corollary to the open and obvious doctrine, we have recognized that there may be attendant circumstances which divert the individual's attention from that hazard and excuse her failure to observe it. Id. Thus, the particular facts and circumstances must be examined to determine whether a hazard is open and obvious. Id.
 {¶ 23} We will first address Olivier's argument that the open and obvious doctrine does not apply when the condition violates the Ohio Basic Building Code ("OBBC"). At the outset, we — as did the trial court — question whether the OBBC's requirement that stair risers not exceed seven inches in height is applicable to the single step at issue. However, because Olivier's expert has indicated that this provision of the OBBC does apply, we will assume, arguendo, that the height of the raised seating area violated the OBBC.
 {¶ 24} Olivier maintains that the existence of building code violations constitutes strong evidence that the restaurant breached its duty of care to her. She asserts that the violation of a building code or some similar statutory violation is either considered evidence of negligence or will support a finding of negligence per se, depending upon the degree of specificity with which the particular duty is stated in the statute. She thus asserts, relying on Francis v. Showcase CinemaEastgate, 155 Ohio App.3d 412, 414, 2003-Ohio-6507, 801 N.E.2d 535, that the open and obvious doctrine does not apply when building code violations are present.
 {¶ 25} We disagree. In Chambers v. St. Mary's School, 82 Ohio St.3d 563,1998-Ohio-184, 697 N.E.2d 198, the supreme court addressed whether a violation of the OBBC may constitute negligence per se. The court explained the difference between negligence and negligence per se, stating: "`The distinction between negligence and `negligence per se' is the means and method of ascertainment. The first must be found by the jury from the facts, the conditions and circumstances disclosed by the evidence; the latter is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required.' * * * Negligence per se is tantamount to strict liability for purposes of proving that a defendant breached a duty." Id. at 565-66 (quoting Swobodav. Brown (1935), 129 Oho St. 512, 522, 196 N.E.2d 274). The supreme court held that violations of the OBBC do not constitute negligence per se, but that they may be admissible as evidence of negligence.
 {¶ 26} In Francis, the First District interpreted Chambers to indicate that an OBBC violation "showed both that the defendant had a duty toward the plaintiff and that the defendant breached that duty." Francis,155 Ohio App.3d at 415. The Francis court then rejected the application of the open and obvious doctrine when an OBBC violation was at issue, reasoning:
 {¶ 27} "Thus, while the Supreme Court of Ohio has reaffirmed the principle that a landowner owes no duty to protect an invitee from open and obvious dangers, it has also held that violations of the OBBC are evidence that the owner has breached a duty to the invitee. In this case, Showcase suggests that this court should simply ignore the evidence of the OBBC violation, but we believe it would be improper to do so. To completely disregard the OBBC violation as a nullity under the open-and-obvious doctrine would be to ignore the holding in Chambers and to render the provisions of the OBBC without legal significance. We hold, then, that the evidence of the OBBC violation raised a genuine issue of material fact regarding Showcase's duty and breach of duty, and that summary judgment was improperly granted." Id. at 415-16.
 {¶ 28} We disagree with the Francis court's application of Chambers.
The Chambers court was not asked to address the open and obvious doctrine, and it did not do so. Yet, the supreme court recognized that strict compliance with a multitude of administrative rules was "virtually impossible" and that treating violations as negligence per se would, in effect, make those subject to such rules the insurer of third parties who are harmed by any violation of such rules. Chambers, 82 Ohio St.3d at 568. In a footnote, the supreme court noted that it would be virtually impossible for a premise owner to strictly comply with the requirement mandating the removal of snow from steps without reference to exceptions or a reasonableness standard. In our view, the supreme court has implied that building code violations may be considered in light of the circumstances, including whether the condition was open and obvious to an invitee. The fact that a condition violates the building code may support the conclusions that the condition was dangerous and that the landowner had breached its duty to its invitee. However, such violations may be obvious and apparent to an invitee. In our judgment, if the violation were open and obvious, the open and obvious nature would "obviate the duty to warn." See Armstrong, 99 Ohio St.3d at 80; see Ryan v. Guan,
Licking App. No. 2003CA110, 2004-Ohio-4032 (the open and obvious doctrine applied, despite the fact that the plaintiff had lost her balance on a curb ramp flare that was one and onehalf times steeper than allowed by the applicable building codes); Duncan v. Capitol South Comm. UrbanRedev. Corp., Franklin App. No. 02AP-653, 2003-Ohio-1273 (unreasonably high curb was an open and obvious danger); see also Quinn v. MontgomeryCty. Educ. Serv. Ctr., Montgomery App. No. 20596, 2005-Ohio-808 (open and obvious doctrine applied to defect in the sidewalk, which municipality had a duty to maintain under R.C. 2744.02(B)(3)).
 {¶ 29} Accordingly, the trial court did not err in its conclusions that the OBBC did not preclude the application of the open and obvious doctrine and that the presence of building code violations do not require a denial of summary judgment to the restaurant.
 {¶ 30} We therefore turn to whether the step to the raised seating area was an open and obvious hazard.
 {¶ 31} "The determination of whether a hazard is latent or obvious depends upon the particular circumstances surrounding the hazard. In a given situation, factors may include lighting conditions, weather, time of day, traffic patterns, or activities engaged in at the time." Leis v.Dayton Med. Imaging II, Ltd. (July 30, 1999), Montgomery App. No. 17684 (quoting Green v. China House (1997), 123 Ohio App.3d 208, 212,703 N.E.2d 872). Thus, the determination requires a fact-intensive inquiry, and the crucial inquiry is whether "a customer exercising ordinary care under [the] circumstances would have seen and been able to guard him or herself against the condition." Kidder at ¶ 10-11. We have recognized that whether a hazard is "open and obvious" may involve genuine issues of material fact requiring resolution at trial. Henry,
supra, at ¶ 14; Kidder at ¶ 9.
 {¶ 32} In granting Leaf Vine's motion for summary judgment, the trial court held:
 {¶ 33} "In the present case, all the alleged O[B]BC violations are open and obvious as is the condition.
 {¶ 34} "Whether the Plaintiff knew the omission of the same was a violation of O[B]BC is not the test. The test is how the condition presents itself.
 {¶ 35} "The condition in this case is that the platform involves one large step up (and one large step down when leaving). The condition is clear that there is no handrail for this step. The condition is clear that the large windows in front of the restaurant provide the light for the area.
 {¶ 36} "If this is a problem, there is nothing latent about it.
 {¶ 37} "The fact that plaintiff misjudged a step is an unfortunate incident which occurs to everyone at some time or another, with any size of step. But clearly the platform height was an open and obvious condition and not a dangerous condition."
 {¶ 38} Olivier asserts, citing Shaw v. Central Oil Asphalt Corp.
(1981), 5 Ohio App.3d 42, 449 N.E.2d 3, that an invitee's previous use of a step does not necessarily reveal the dangerous nature of the step to the invitee. In Shaw, the court rejected the contention that a truck driver's prior use of stairs to a loading platform gave the driver notice of the lack of a handrail and the condition of one of the steps, which was bowed out and bent. The court distinguished Leighton v. Hower Corp.
(1948), 149 Ohio St. 72, and Raflo v. Losantiville County Club (1973),34 Ohio St.2d 1, both of which had held that the plaintiff had notice of a single step which she had ascended successfully but had tripped on while descending shortly thereafter. The Shaw court reasoned:
 {¶ 39} "[I]n the case at bar, the fact that [plaintiff] stood atop the platform demonstrated that he had knowledge of the existence of the staircase. Without such knowledge he would never have reached the platform. But a distinction must be drawn between knowledge of the existence of the staircase and knowledge of its condition. Reaching the platform did not require that [plaintiff] have knowledge of the condition of each step. Such detailed knowledge was not essential to the successful negotiation of the staircase. Indeed, [plaintiff] could have continued to use the stairs without ever learning that one was bent. Therefore, his prior use alone does not demonstrate with the conclusiveness necessary for summary judgment that [plaintiff] knew the conditions of which he complains." Shaw, supra, at 43.
 {¶ 40} We have likewise held that "prior usage in itself is not conclusive of knowledge of dangerous conditions unless knowledge of the condition was essential to the success of the prior use." Seyler v.Starbaord Side Enters., Inc. (1993), Montgomery App. No. 13748. InSeyler, the plaintiff successfully traversed steps from a parking lot into MacDigger's Pub. The steps did not comply with the OBBC regarding the slope of the egress ramp, the size of the landing, the slip-resistant material and the existence of a handrail. When the plaintiff later attempted to descend the same steps, she fell.
 {¶ 41} Following Shaw, we concluded that because the plaintiff had admitted that she was aware of the lack of a handrail, she knew of the dangers of traversing the steps without one. However, we noted that the plaintiff had testified that she was not aware of the additional defects in the steps and that "knowledge of the condition of the steps was not essential to prior use in this case." Thus, we reversed the trial court's grant of summary judgment to the pub.
 {¶ 42} Unlike the stairs in Shaw and Seyler, Olivier was necessarily on notice of the height of the single step to the raised seating area due to her prior use. Olivier could not have taken her seat and eaten in that area without successfully stepping onto the platform. We note that Olivier has not claimed that she did not see the step when she attempted to step down nor has she alleged that she did not remember its location. To the contrary, Olivier testified during her deposition that her companion descended the step while she was putting on her coat, and that she was looking down the step immediately before she fell. She further testified that she saw the floor, although noting that it was dark.
 {¶ 43} Olivier claims that the lighting conditions made it difficult for her to judge the height of the step accurately, and thus the condition of the step was not open and obvious. Olivier indicated that the sun had been in her eyes, making it more difficult to judge the height of the step, and she stated that there was no artificial lighting to mark the change in elevation. Olivier analogizes to Demock v. D.C.Entertainment Catering, Inc., Wood App. No. WD-03-087, 2004-Ohio-2778, in which the court denied summary judgment to the property owners after the plaintiff had fallen down a flight of dimly lit stairs with no handrails, several building code violations, and uniform-colored carpeting.
 {¶ 44} Upon review of the photographs of the seating area, we see nothing to persuade us that the condition was not open and obvious. Moreover, unlike the plaintiff in Demock, who had fallen down a different set of stairs than she had ascended, Olivier fell while trying to descend the single-step that she had just ascended upon arriving at Leaf 
Vine. Although the lighting might have affected whether the condition would have been open and obvious had that been her first encounter with the step, we cannot agree that Olivier was less aware of the unusual height of the step upon her descent. The fact that the restaurant appeared darker due to the natural lighting should have caused her to take additional care upon descending the step. The restaurant "had the right to assume visitors to the restaurant would appreciate a known risk and take action to protect themselves accordingly." See Moses v. The PourHouse Restaurant (June 3, 1992), Wyandot App. No. 16-91-18 (where plaintiff had to step up onto the elevated platform in restaurant to sit at the table, the step was an open and obvious hazard); Raflo, supra.
 {¶ 45} The second and third assignments of error are overruled.
 {¶ 46} The judgment of the trial court will be affirmed.
Fain, J. and Donovan, J., concur.