[Cite as *George v. Kroger Co.*, 2013-Ohio-2929.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| BARBARA GEORGE, et al. | : | |
| | : | Appellate Case No. 25552 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2011-CV-6064 |
| v. | : | |
| | : | |
| THE KROGER COMPANY, et al. | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of July, 2013.

. . . . . . . . . .

MARY E. LENTZ, Atty. Reg. #0043985, and MICAH M. SIEGAL, Atty. Reg. #0085647, Gottschlich & Portune, LLP, 201 East Sixth Street, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellant

RAY C. FREUDIGER, Atty. Reg. #0055564, Freund, Freeze & Arnold, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402-2017
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.,

{¶ 1}    Barbara George appeals from the trial court's entry of summary judgment in favor of appellee Kroger Company on a negligence complaint stemming from her trip and fall in

a Kroger grocery store.[1]

{¶ 2}    George's sole assignment of error challenges the trial court's finding that a flat-bed dolly, the alleged cause of her fall, was an open and obvious hazard.

{¶ 3}    The record reflects that George took a shopping cart upon entering the grocery store and went to the produce department. As she proceeded down an aisle, she saw permanent vegetable displays on shelves on the right and left-hand sides of the aisle. George also saw a temporary display piled high with watermelons to her left. She parked her cart near the watermelons and stepped to her left toward the lettuce, which she had seen in the permanent display on the left-hand side of the aisle. As she did so, George tripped and fell over an empty flat-bed dolly on wheels. She estimated that the handleless dolly was approximately two feet long by two feet wide and stood a three or four inches off of the ground. The dolly was up against the temporary watermelon display.

{¶ 4}    George subsequently sued Kroger for negligence as a result of her fall. Kroger moved for summary judgment, arguing that the dolly was an open and obvious hazard. The trial court agreed. Finding no genuine issue of material fact, it sustained Kroger's motion. The trial court reasoned that the dolly was an open and obvious hazard as a matter of law, that no attendant circumstances negated the open and obvious nature of the hazard, and that an active-negligence exception to the open-and-obvious doctrine did not apply.

{¶ 5}    We review a grant of summary judgment de novo, which means that "we apply the standards used by the trial court." *Brinkman v. Doughty*, 140 Ohio App.3d 494, 497, 748

---

[1] Barbara George's husband, Michael, is also an appellant herein based on a derivative loss-of-consortium claim he asserted below. The focus of the present appeal, however, is Barbara George's negligence claim.

N.E.2d 116 (2d Dist.2000). Summary judgment is appropriate when a trial court correctly finds "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 6} On appeal, George contends the trial court erred in entering summary judgment against her. She advances four arguments in support. First, she challenges the trial court's finding that the dolly was an open and obvious hazard as a matter of law. Second, she claims the trial court erred in ignoring several attendant circumstances. Third, she asserts that placement of the dolly in her path constituted "active negligence" that obviated the open-and-obvious doctrine. Fourth, she argues that Kroger's destruction of a videotape of the incident is itself an "issue of material fact that should have precluded summary judgment[.]"

{¶ 7} To prevail on a negligence claim, "one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981). The status of a person who enters the land of another defines the scope of the duty owed to the entrant. *Gladon v. Greater Cleveland Reg. Transit Auth.*, 75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287.

{¶ 8} Here George was a business invitee on Kroger's property. As it pertains to business invitees, an owner's duty is to keep the premises in reasonably safe condition and to warn of known dangers. *James v. Cincinnati*, 1st Dist. Hamilton No. C-070367, 2008-Ohio-2708, ¶ 24, citing *Eicher v. U.S. Steel Corp.*, 32 Ohio St.3d 248, 512 N.E.2d 1165 (1987). Liability

arises when an owner has "superior knowledge of the particular danger which caused the injury" as an "invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate." *Uhl v. Thomas*, 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, ¶13, citing *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210, 503 N.E.2d 159 (1986).

{¶ 9} When a danger is open and obvious, a property owner owes no duty of care to individuals lawfully on the premises. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶14. "To be open and obvious, a hazard must not be concealed and must be discoverable by ordinary inspection." (Citation omitted) *Johnson v. Southview Hosp.*, 2d Dist. Montgomery No. 25049, 2012-Ohio-4974, ¶9. The issue is not whether an individual observes a condition, but whether it is capable of being observed. *Larrick v. J.B.T., Ltd.*, 2d Dist. Montgomery No. 21692, 2007-Ohio-1509, ¶11.

{¶ 10} George argues on appeal that she lacked any advance opportunity to perceive the dolly and avoid the danger. Specifically, she asserts (1) that Kroger employee Derrick Lehman placed the dolly against the watermelon display seconds before she encountered it and (2) that the watermelon display concealed the dolly from view so that she lacked the ability to avoid it. Under these circumstances, she contends the trial court erred in concluding, as a matter of law, that the hazard presented by the dolly was open and obvious.

{¶ 11} Upon review, we find George's argument to be unpersuasive. George did testify during her deposition that Lehman admitted placing the dolly against the watermelon display only seconds before she fell. (George depo. at 48). Based on the record before us, however, we fail to see how that fact made any difference in this case. When she started walking down the produce

aisle, she was not in a position to see the dolly and could not say whether it was present.[2] (*Id*. at 37-39). George also testified that she did not see Lehman place the dolly against the watermelon display after she parked her cart and turned toward it. Therefore, she agreed he must have placed the dolly in its position before she parked her cart. (*Id*. at 42-43). Significantly, George admitted that *once she parked her cart there was nothing obstructing her view of the dolly*. (*Id*. at 41). When asked why she could not see it, she responded: *"I did not look down. I was looking at the lettuce."* (Emphasis added). (*Id*. at 43).

{¶ 12} In our view, the foregoing testimony refutes George's claim that the watermelon display concealed the dolly to such an extent that she lacked sufficient advance opportunity to observe the dolly and avoid tripping. The deposition exhibits (which include sketches and pictures of the produce aisle, watermelon display, and dolly) also persuade us that the tripping hazard presented by the dolly was open and obvious. Although the dolly lacked a handle, it was a relatively large object that reasonably should have been observed if, as George admitted, nothing was obstructing her view of it when she parked her cart and turned toward it. Indeed, George's own testimony reveals that she failed to see the dolly because she was looking at the lettuce, not because it wasn't reasonably observable.

{¶ 13} In reaching the foregoing conclusion, we reject George's claim that the trial court

---

[2] Earlier in her deposition testimony, George suggested that the dolly in fact was not present when she began walking down the aisle. *See* George depo. at 30 ("My basket was parked when I decided to get the lettuce to the left and prior to that when I'm walking down the aisle I saw nothing because there was nothing there. The stock boy had told me he had just put that flatbed [dolly] there seconds ago."). Later in her deposition, she was asked to clarify this statement. She again appeared to claim the dolly was not present. (*Id.* at 38). When pressed further, however, George admitted that she could not see whether the dolly was present when she began walking down the aisle. (*Id.* at 38-39). She explained that she meant nothing was visible *in the aisle* itself and that she was unsure whether the dolly already had been placed against the watermelon display. (*Id.*).

erroneously followed *Colvin v. Kroger Co.*, 12th Dist. Madison No. CA2005-07-026, 2006-Ohio-1151, instead of *Kidder v. Kroger Co.*, 2nd Dist. Montgomery No. 20405, 2004-Ohio-4261. In *Colvin*, the plaintiff encountered a four-foot-high "Slim Jim" display at the end of a grocery-store aisle. She rounded the corner to the right of the display and tripped on an empty, flat cart. The cart was three or four feet long and stood eight to ten inches high. The cart was "butted up against the display." Although the cart had a waist-high handle, the record did not reflect whether the handle was against the display or was to the right of the display. *Colvin* at ¶2-3. The plaintiff "testified that as she was walking toward the lunch meats, she was not looking at the ground but instead was looking straight ahead, trying to gauge where she needed to go to find the pepperoni." *Id.* at ¶3. After reviewing the plaintiff's deposition, as well as photographs and drawings, the Twelfth District affirmed the trial court's entry of summary judgment for Kroger based on the open-and-obvious doctrine.

{¶ 14} In *Kidder*, the plaintiff made a left-hand turn at the end of a frozen-food aisle. As she did so, she fell to the floor. She then saw water "all over the floor." After her fall, the plaintiff noticed someone mopping several aisles away. The plaintiff testified that she "might" have seen the water if she had been looking for water. *Kidder* at ¶3. On review, this court found a genuine issue of material fact as to whether the water on the floor was an open-and-obvious hazard. This court noted the clearness of the water and the existence of little advance opportunity to avoid the danger. This court also noted the plaintiff's equivocal testimony that she "might" have seen the water if she had been looking for it. Implicit in this statement was the converse, that she might not have seen the water even if she had been looking. Under such circumstances, this court found summary judgment inappropriate. *Id.* at ¶9.

{¶ 15}  In the proceedings below, the parties disputed whether the present case most closely resembled *Colvin* or *Kidder*. The trial court found *Colvin* the most analogous, reasoning:

Here, the Court finds that Ms. George's circumstances are practically identical to that of the *Colvin* Court. The dolly is substantially similar in length and width to the cart which is discussed in *Colvin*, even having similar properties of visibility (as compared with puddles of water). As stated by the *Colvin* court, the cart and dolly is not hidden from view by the mere fact that it is lower to the ground. A reasonable person would have seen the cart or the dolly, had they simply not "abandoned the duty imposed to look." * * *

Plaintiffs argue that *Kidder*, and by virtue of application of law *Henry [v. Dollar Gen. Store*, 2d Dist. Greene No. 2002-CA-47, 2003-Ohio-206,] are applicable to Ms. George's injuries. In both, the plaintiffs encountered their hazard after either turning a corner or exiting a building, just as Ms. George turned the corner and encountered the dolly. * * * However, the court cannot agree. According to Ms. George's own deposition, Ms. George was not rounding a corner where the dolly happened to be parked. Ms. George parked her shopping cart "straight ahead," turned her body left to face the opposite display of lettuce, and then took a step forward, consequently tripping on the dolly. (George Deposition, p. 56-57). Ms. George also testified that once she faced the lettuce display, nothing obstructed her view. (*Id*. at 41). Unlike *Kidder* and *Henry*, where the plaintiffs had no opportunity [to] evaluate the hazard, Ms. George had a clear opportunity to become aware of her surroundings, since she was apparently

required to park her shopping cart and change direction to reach the lettuce. In the words of the Second District, Ms. George simply "abandoned the duty imposed to look." * * *

(Citations omitted) (Doc. #65 at 7-8).

{¶ 16} Upon review, we believe the facts before us are more analogous to the flat cart in *Colvin* than the clear water in *Kidder*. But that determination is not dispositive, as *Colvin* and *Kidder* both have some distinguishing facts. For example, the cart in *Colvin* had a waist-high handle, whereas the dolly in the present case lacked a handle. The location of the flat cart in *Colvin* relative to the Slim Jim display also may have differed from the location of the dolly relative to the watermelon display here. Without access to the photographs on which the Twelfth District relied, we cannot know. On the other hand, the object that caused the fall in *Kidder* was clear, whereas the dolly was not. Moreover, the plaintiff in *Kidder* admitted only that she "might" have seen the water if she had been looking for it, whereas George admitted that she did not see the dolly because she was not looking. The foregoing distinctions illustrate a fundamental point: "The open and obvious nature of a hazard on any premises is analyzed by a fact-specific inquiry and must be determined on a case by case basis. For this reason, previously decided open and obvious cases tend to be of limited value." *Colville v. Meijer Stores Ltd.*, 2d Dist. Miami No. 2011-CA-011, 2012-Ohio-2413, ¶43 (Donovan, J., concurring); *see also Henry* at ¶16. Thus, our determination that the open-and-obvious doctrine applies here does not turn on a choice between *Colvin* and *Kidder*. Instead, it turns on our review of the evidence, including George's deposition testimony, photographs, and drawings. That evidence persuades us the hazard presented by the dolly on which George tripped was open and obvious as a matter of law.

{¶ 17} George's argument about attendant circumstances fails to persuade us otherwise. "As a corollary to the open-and-obvious doctrine, [this court has] recognized that there may be attendant circumstances [that] divert the individual's attention from [a] hazard and excuse her failure to observe it." *Olivier v. Leaf & Vine*, 2d Dist. Miami No. 2004 CA 35, 2005-Ohio-1910, ¶22. In her brief, George identifies what she believes are three attendant circumstances the trial court ignored: (1) the dolly's placement "behind/beside a display such that it would not become visible to those to whom it might pose a danger until they were already tripping over it," (2) Lehman's placement of the dolly against the watermelon display "within seconds of her tripping over it," and (3) the fact that she tripped "within her first step toward the permanent lettuce case." She also claims the trial court erred in its analysis of a fourth attendant circumstance, Lehman's presence in the area where he was working with produce on another dolly.

{¶ 18} Having reviewed the record, we find no attendant circumstances that reasonably would have diverted George's attention from the dolly and excused her failure to observe it. The first three circumstances she cites are not things that diverted her attention from the dolly. The placement of the dolly, the timing of its placement, and the fact that she tripped after taking a step are not "distractions" at all. The only arguable attendant circumstance mentioned by George is the presence of Lehman. But George did not testify that Lehman's activities distracted her from observing the dolly on which she tripped. We find no evidence to support such a conclusion. In addition, attendant circumstances have been found not to include common or ordinary events. *See*, *e.g.*, *Carter v. Miles Supermarket*, 8th Dist. Cuyahoga No. 95024, 2010-Ohio-6365, ¶27. This includes the routine restocking activity of a grocery employee. *Isaacs v. Meijer, Inc.*, 12th Dist. Clermont No. CA2005-10-098, 2006-Ohio-1439, ¶19.

{¶ 19}  We are equally unpersuaded that Lehman's placement of the dolly next to the watermelons constituted "active negligence" precluding application of the open-and-obvious doctrine. Arguing to the contrary, George cites *Simmons v. Am. Pacific Ent., L.L.C.*, 164 Ohio App.3d 763, 2005-Ohio-6957, 843 N.E.2d 1271 (10th Dist.). In *Simmons*, an employee placed a dock plate between the plaintiff's delivery truck and a loading dock to cover a gap. After the plaintiff unloaded his freight, the employee removed the plate. The plaintiff remained in the truck to rearrange his own cargo.  With his back to the loading dock and unaware the plate had been removed, the plaintiff stepped off the truck and fell in the gap. Although the plaintiff acknowledged he would have seen the gap if he had looked, the Tenth District found the open-and-obvious doctrine inapplicable.   It reasoned:

> Premises tort claims where the alleged negligence arises from static or passive conditions, such as preexisting latent defects, are legally distinct from claims averring active negligence by act or omission.* * * The distinction between static and dynamic forms of negligence is legally significant, because it directly correlates to the two separate and distinct duties an occupier owes its business invitees: (1) static conditions relate to the owner's duty to maintain its premises in a reasonably safe condition, including an obligation to warn its invitees of latent or hidden dangers, while (2) active negligence relates to the owner's duty not to injure its invitees by negligent activities conducted on the premises. * * *

> The open-and-obvious doctrine eliminates a premises occupier's duty to warn a business invitee of static dangers on the premises if the dangers are known to the invitee or are so obvious and apparent to the invitee that he or she may

reasonably be expected to discover them and protect himself or herself against them. * * * The rationale is that an open and obvious danger serves as its own warning. Open and obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection. * * * A person does not need to observe the dangerous condition for it to be an "open and obvious" condition under the law; rather, the determinative issue is whether the condition is observable. * * * Even in cases where the plaintiff did not actually notice the condition until after he or she fell, this court has found no duty to exist in cases where the plaintiff could have seen the condition if he or she had looked. * * *

Here, the trial court found that APE did not have a duty to warn [the plaintiff] of the injury-causing gap because the condition was open and obvious as a matter of law. Although [the plaintiff] had his back to the gap and was not aware of its existence, [he] acknowledged that he would have seen the gap had he turned and looked. Plaintiffs' negligence claim, however, was not predicated solely on a failure to warn of a preexisting static hazard; plaintiffs allege that [the employee] negligently removed the dock plate while [the plaintiff] was still in the process of unloading freight. The evidence of record in fact demonstrates that [the employee] removed the dock plate some time before [the plaintiff's] injury, thus creating an issue of fact concerning [the employee's] actions and whether they constitute an act of negligence to which the open-and-obvious doctrine would not apply. While the amount of time elapsing between [the employee's] act and [the plaintiff's] injury may be significant in determining whether [the employee's] action had

become a static condition on the premises, the record evidence makes sufficiently clear that when the facts are construed in a light most favorable to plaintiffs, reasonable minds could find that [the employee's] active conduct caused [the plaintiff's] injury, thus rendering the open-and-obvious doctrine inapplicable.

(Citations omitted). *Id.* at ¶20-22.

{¶ 20}   George contends the present case is analogous to *Simmons*.  Like the employee in *Simmons*, who removed the dock plate shortly before the plaintiff fell, George argues that Kroger employee Lehman placed the dolly in her path only seconds before she tripped and fell. She argues that this "active negligence" by Lehman precluded application of the open-and-obvious doctrine. At a minimum, she contends the record reveals a genuine issue of material fact as to whether Lehman committed active negligence within the meaning of *Simmons*.

{¶ 21}   Upon review, we find George's reliance on *Simmons* misplaced. In *Simmons*, the plaintiff had used the dock plate while unloading freight for the employee. That being so, the plaintiff arguably had no reason to look behind him to be sure the plate remained in place as he rearranged his own cargo. Having encountered the plate moments before, the plaintiff reasonably may have assumed it remained in place absent any warning from the employee. Unlike *Simmons*, the record contains no evidence that George had traversed the area around the watermelon display before her fall. When she began walking down the aisle, she was not in a position to see the dolly and could not say whether it already was present. (George depo. at 37-39). She knows only that Lehman must have placed the dolly in its position sometime before she parked her cart and turned toward the lettuce. (*Id*. at 42-43). Unlike *Simmons*, the record does not reflect any prior observation of the area around the watermelon display that might excuse George from looking

again. From her perspective, then, it mattered not whether the dolly had been placed against the watermelon display seconds earlier or hours earlier. Either way, she would have tripped because she "was looking at the lettuce." (*Id*. at 43). Because the timing of Lehman's placement of the dolly against the watermelon display had no bearing on George's fall, we reject her argument that the accident was attributable to active negligence rather than a static hazard. The rationale underlying the distinction drawn in *Simmons* has no applicability here.

{¶ 22} Finally, we reject George's claim that Kroger's destruction of a videotape of the incident precluded the entry of summary judgment against her. This argument concerns store manager Martin Crump's deposition testimony that he had reviewed video footage of the produce department from a security camera. According to Crump, he "didn't see anything on there" because the camera "did not cover where [George] fell." (Crump. depo. at 30, 56). Crump testified that he did not know what George looked like. (*Id*. at 60). As a result, he could not say whether he saw her anywhere on the tape. (*Id*. at 57). He knew, however, that he did not see the fall depicted on the tape. (*Id*.). Crump explained that the tape no longer existed because videos are overwritten every thirty days pursuant to store policy. (*Id*. at 55).

{¶ 23} On appeal, George argues that destruction of the tape supports an inference that its contents were adverse to Kroger. George further argues that this inference was sufficient to defeat Kroger's summary-judgment motion. We reject this argument for at least two reasons. First, George did not raise this argument in opposition to Kroger's summary-judgment motion, despite the fact that Crump was deposed on April 18, 2012 and she filed her opposition memorandum on June 21, 2012.[3] We cannot fault the trial court for failing to rely on an

[3] George raised the destruction-of-evidence issue only in the context of seeking leave to file an amended complaint adding a

argument George did not raise. Second, the inference George mentions does not arise absent "a strong showing of malfeasance." *Roetenberger v. Christ Hosp.*, 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441, ¶25 (1st Dist.2005). No such showing was made here.

**{¶ 24}** Based on the reasoning set forth above, we overrule George's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

WELBAUM, J., concurs.
FROELICH, J., concurs in judgment only.

Copies mailed to:

Mary E. Lentz
Micah M. Siegal
Ray C. Freudiger
Hon. Gregory F. Singer

---

spoliation claim. The trial court denied leave to amend, and George has not challenged that ruling on appeal. Her memorandum opposing summary judgment did not address the destruction-of-evidence issue. (*See* Doc. #44).