[Cite as *Fehrenbach v. O'Malley*, 2011-Ohio-5481.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TARA N. FEHRENBACH, | : | APPEAL NO. C-100730 |
| | | TRIAL NO. A-9701756 |
| GINA D. FEHRENBACH, | : | |
| | | *O P I N I O N.* |
| and | : | |
| THOMAS J. FEHRENBACH, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| KATHRYN O'MALLEY, M.D., | : | |
| and | : | |
| SUBURBAN PEDIATRIC ASSOCIATES, INC., | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 28, 2011

*John H. Metz*, for Plaintiffs-Appellants,

*Lindhorst & Dreidame, Michael F. Lyon*, and *Bradley D. McPeek*, for Defendants-Appellees.

Please note: This case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1}    Plaintiffs-appellants Tara, Gina, and Thomas Fehrenbach, filed a medical malpractice action against defendants-appellees Kathryn O'Malley, M.D., and her employer, Suburban Pediatric Associates, Inc., (collectively, where appropriate, "Dr. O'Malley").  A jury returned a verdict in favor of Dr. O'Malley.  The Fehrenbachs have filed a timely appeal.  We find no merit in their six assignments of error, and we affirm the trial court's judgment.

### I.   Facts and Procedure

{¶2}    On October 1, 1990, 14-month-old Tara woke with a temperature of 105.2 degrees.  She vomited, and her mother, Gina, found her to be "lethargic."  Gina made an appointment to take Tara to see her pediatrician, Dr. O'Malley, at Suburban Pediatric Associates, that afternoon.

{¶3}    Tara had had a history of ear infections and her parents had scheduled surgery to correct her ear problems.  Dr. O'Malley examined Tara and concluded that she had a severe double ear infection.  She prescribed an oral antibiotic and Tylenol.

{¶4}    That night, Tara was cranky and slept poorly.  Gina noticed that she would not lie on her back.  Gina took Tara back to Dr. O'Malley's office the following morning.  She told the doctor that Tara's fever had not been lower than 104 degrees, that she was still vomiting, and that she was "very lethargic."  Dr. O'Malley examined her and found that Tara was still suffering from ear infections.  She told Gina to continue with the antibiotic and Tylenol, and to give Tara fluids to prevent dehydration.

{¶5}    On the morning of October 3, Tara showed some improvement.  Her temperature was lower, and she was able to sit up for a short time and eat a little.

2

Gina felt encouraged and left Tara with her mother-in-law while she went to work for a short time.

{¶6} Tara took a turn for the worse that afternoon. Her fever spiked and her grandmother had difficulty arousing her from sleep. Gina came home and found Tara to be extremely lethargic. She held Tara most of the afternoon and Tara pressed her head into Gina's arm.

{¶7} That night, Thomas returned from an out-of-town trip. He thought that Tara looked worse than she had when he had left on October 1. He insisted that they call the doctor's office. The on-call physician at Suburban Pediatrics told them to take Tara to the hospital immediately. They took her to the emergency room at Children's Hospital Medical Center.

{¶8} A lumbar puncture revealed that Tara had bacterial meningitis. Her spinal fluid revealed over 1 million colonies of a particularly virulent, antibiotic-resistant bacterium that was virtually unknown in Cincinnati at the time. Tara was given intravenous antibiotics and remained hospitalized for over a month.

{¶9} While she was hospitalized, Tara suffered numerous complications. She developed hydrocephalus, a condition in which her body's ability to drain cerebral fluid was compromised. The doctors placed a shunt into her head to drain the fluid down to her abdomen. Tara will have to have a shunt for the rest of her life.

{¶10} The doctors agreed that Tara had survived the meningitis against the odds. She did not develop any cognitive impairment, and she was a college student with a high grade-point average at the time of the trial. Nevertheless, she has had multiple brain surgeries to remedy complications from the shunt and other issues that resulted from the meningitis. She also had to have surgery to remedy chronic back pain. She will have to be monitored for the rest of her life to make sure that the shunt does not malfunction. If it does, and she becomes lethargic and/or suffers a

severe headache, she must be able to get to a medical facility capable of conducting brain surgery within four hours or she could die.

{¶11}   Seven years after Tara's illness, Tara, through her parents, sued Dr. O'Malley and her employer, Suburban Pediatrics, for medical malpractice. Her parents also filed a loss-of-consortium claim. Following a trial, a jury returned a verdict in favor of O'Malley. The trial court denied the Fehrenbachs' motion for a new trial or for judgment notwithstanding the verdict. The Fehrenbachs filed a timely appeal from the trial court's judgment.

{¶12}   We reversed the trial court's judgment on several grounds, most notably, pervasive misconduct by Dr. O'Malley's counsel. *Fehrenbach v. O'Malley*, 164 Ohio App.3d 80, 2005-Ohio-5554, 841 N.E.2d 350 ("*Fehrenbach I*"). We remanded the case for a new trial on both the medical-malpractice claim and the parental loss-of-consortium claim. Id. at ¶103.

{¶13}   The case was again tried to a jury. The Fehrenbachs presented expert testimony that Dr. O'Malley had deviated from the standard of care by failing to diagnose and treat for meningitis, and that earlier treatment would have prevented the bacteria in Tara's blood from infecting her brain or would have attacked the meningitis in time to prevent hydrocephalus and the other complications that Tara had suffered.

{¶14}   O'Malley presented expert testimony showing that Tara had a rare, aggressive strain of bacteria that did not emerge as meningitis until the afternoon of October 3, when she took a turn for the worse. O'Malley's experts testified that Tara did not have meningitis when she saw Dr. O'Malley on October 1 and 2, and that given the non-specific symptoms that Tara had presented with on October 1 and 2, a diagnosis of ear infections was reasonable.

{¶15} After the jury returned a verdict in favor of Dr. O'Malley, the Fehrenbachs filed motions for judgment notwithstanding the verdict ("JNOV") and for a new trial. The trial court denied both motions. This appeal followed.

## II. Conduct of Defense Counsel

{¶16} In their first assignment of error, the Fehrenbachs contend that the trial court erred in overruling their motions for JNOV and for a new trial. They argue that defense counsel made numerous improper remarks in front of the jury designed to arouse passion or prejudice and that defense counsel's misconduct again required a new trial. This assignment of error is not well taken.

{¶17} We review a decision to grant or deny a motion for JNOV de novo. A JNOV is proper if, upon viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could come to but one conclusion in favor of the moving party. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶3-4; *Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, ¶44. But where substantial evidence upon which reasonable minds could reach different conclusions exists to support the nonmoving party's side of the case, the court must deny the motion. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 504 N.E.2d 19; *Blair*, supra, at ¶44. We review a ruling on a motion for a new trial under an abuse-of-discretion standard. *Eysoldt v. Go Daddy.com, Inc.*, 1st Dist. Nos. C-100528 and C-100529, 2011-Ohio-2359, ¶18; *Blair*, supra, at ¶44.

{¶18} A trial atmosphere tainted with passion and prejudice is grounds for reversal. *Wynn v. Gilbert*, 1st Dist. No. C-060457, 2007-Ohio-2798, ¶34. Remarks or arguments that are not supported by the evidence and are designed to arouse passion or prejudice to the extent that there is a substantial likelihood that the jury may be misled are improper. *Roetenberger v. Christ Hosp.*, 163 Ohio App.3d 555,

2005-Ohio-5205, 839 N.E.2d 441, ¶9; *Furnier v. Drury*, 163 Ohio App.3d 793, 2004-Ohio-7362, 840 N.E.2d 1082, ¶10.  Counsel must refrain from unwarranted attacks on opposing counsel, the opposing party, and the witnesses.  *Roetenberger*, supra, at ¶9; *Furnier*, supra, at ¶10.

{¶19}   The trial court has a duty to see that counsel's statements stay within proper limits and to prohibit counsel from creating an atmosphere of passion and prejudice.  *Roetenberger*, supra, at ¶9; *Furnier*, supra, at ¶10.  It should not permit abusive conduct, and it has a duty to intervene sua sponte to correct the prejudicial effect of misconduct.  *Pesak v. Univ. Neurologists Assn., Inc.*, 87 Ohio St.3d 495, 2000-Ohio-483, 501, 721 N.E.2d 1011; *Fehrenbach I*, supra, at ¶23; *Roetenberger*, supra, at ¶9.  But a trial court's duty to intervene does not apply where counsel's arguments are based on the evidence.  *Wynn*, supra, at ¶34.

{¶20}   In *Fehrenbach I*, we held that defense counsel's comments "were offensive and prejudicial to the plaintiffs and to the integrity of the judicial system." We went on to state that defense counsel's comments "went far beyond the wide latitude provided to counsel in opening statement and closing argument."  Id. at ¶26. In fact, we decided a series of cases involving the same defense counsel and ordered new trials based on that counsel's misconduct.  See, e.g, *Thamann v. Bartish*, 167 Ohio App.3d 620, 2006-Ohio-3346, 856 N.E.2d 301, ¶5-47; *Roetenberger*, supra, at ¶4-12; *Furnier*, supra, at ¶6-13.

{¶21}   Our review of the record in this case showed that nothing that occurred in this trial rose to the level of the misconduct that had occurred in the previous one.  On the contrary, defense counsel was restrained and took a new approach to the trial.  Instead of attacking the Fehrenbachs, their attorney and their experts, counsel stated that "the bad guy" in this case was meningitis and that no one else, particularly Dr. O'Malley, had done anything wrong.  The incidents that the

Fehrenbachs cite as evidence of misconduct are simply not that egregious, and the record shows that counsel's arguments were generally based upon the evidence. We find no misconduct by defense counsel that was prejudicial in the context of the overall trial.

{¶22} Further, contrary to the Fehrenbachs' assertions otherwise, the trial judge kept a tight rein on the trial. In overruling the Fehrenbachs' motions for JNOV and for a new trial on the basis of misconduct by defense counsel, the court stated that "[t]his Court's recollection of the conduct of defense counsel is totally inconsistent with that set forth in the memorandum supporting plaintiff's motion. Defense counsel's conduct was well within the appropriate parameters of representing his client."

{¶23} Where the record supports a trial court's finding that counsel's conduct did not affect the outcome of the trial, an order denying a new trial is not an abuse of discretion. *Merkl v. Siebert*, 1st Dist. Nos. C-080973 and C-081033, 2009-Ohio-5473, ¶26. "[A]ppellate courts should defer to trial judges, who witnessed the trial firsthand and relied upon more than a cold record to justify a decision." *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶36; *Merkl*, supra, at ¶36.

{¶24} We cannot hold as a matter of law that the verdict in this case was the product of passion and prejudice due to counsel's misconduct. Therefore, the trial court did not err in overruling the Fehrenbachs' motion for JNOV. Further, the court's decision to overrule the motion for a new trial was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140; *Cincinnati v. Harrison*, 1st Dist. No. C-090702, 2010-Ohio-3430, ¶7. Therefore, the trial court

did not err in overruling the Fehrenbachs' motion for a new trial, and we overrule their first assignment of error.

### III. Alteration of Medical Records

{¶25} In their second assignment of error, the Fehrenbachs contend that the trial court erred in granting Dr. O'Malley's motion for a directed verdict and in denying their motion for a directed verdict on their claims for alteration of medical records. They argue that the evidence was undisputed that Dr. O'Malley had altered Tara's medical records, and that the question of whether the doctor had altered the records to avoid liability was, at least, a question of fact for the jury. This assignment of error is not well taken.

{¶26} The standard for granting a directed verdict is the same as for granting JNOV. *Mantua Mfg. Co. v. Commerce Exchange Bank*, 75 Ohio St.3d 1, 4, 1996-Ohio-187, 661 N.E.2d 161; *Lally v. Mukkada*, 1st Dist. No. C-100602, 2011-Ohio-3681, ¶5. We review the trial court's decision de novo. *Eysoldt*, supra, at ¶18. The trial court should grant the motion if, after construing the evidence most strongly in favor of the nonmoving party, it finds that reasonable minds could come to but one conclusion on any determinative issue and that conclusion is adverse to the nonmoving party. Civ.R. 50(A); *Mantua Mfg.*, supra, at 4.

{¶27} All parties agree that Dr. O'Malley added information to Tara's medical records regarding her temperature, the diagnosis, the medicine prescribed and an instruction to call if Tara's symptoms worsened. Dr. O'Malley contended that she added the information because her partner had brought the incomplete chart to her attention. She also gave other, inconsistent explanations at various times.

{¶28} In *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 1994-Ohio-324, 635 N.E.2d 331, the Ohio Supreme Court stated that "[a]n intentional

alteration, falsification or destruction of medical records by a doctor, to avoid liability for his or her medical negligence, is sufficient to show actual malice, and punitive damages may be awarded whether or not the act of altering, falsifying or destroying records directly causes compensable harm." Id., paragraph one of the syllabus. Thus, a plaintiff can bring a *Moskovitz* claim for a presumption of malice.

{¶29} In *Moskovitz*, the doctor had "whited-out" incriminating portions of his original office chart, added exculpatory language, made copies of the new chart, and destroyed the original chart. *Fisher v. Von Loveren*, 1st Dist. No. C-070228, 2008-Ohio-4115, ¶37. In this case, the notes that were added later to the medical records were accurate. Thus, as the trial court found, the Fehrenbachs could not show malice. See *Fisher*, supra, at ¶38; *Wachtman v. Meijer, Inc.*, 10th Dist. No. 03AP-948, 2004-Ohio-6440, ¶26-29.

{¶30} A plaintiff can also bring an independent tort claim for spoliation of evidence. See *Smith v. Howard Johnson Co.*, 67 Ohio St.3d 28, 29, 1993-Ohio-229, 615 N.E.2d 1037. On remand, the trial court allowed the Fehrenbachs to amend their complaint to present the claim, as we had suggested in the previous appeal. See *Fehrenbach I*, supra, at ¶45-46.

{¶31} But one of the elements of the claim is willful destruction of evidence by the defendant designed to disrupt the plaintiff's case. *Smith*, supra, at 29; *Hope v. Lake Cty. Bd. of Commrs.*, 11th Dist. No. 2008-L-173, 2009-Ohio-5895, ¶72. Ohio courts have declined to extend spoliation claims beyond the destruction of physical evidence. *Hope*, supra, at ¶72; *Williams v. Continental Express Co.*, 3rd Dist. No. 17-08-10, 2008-Ohio-5312; *Wachtman*, supra, at ¶24-25. Because the Fehrenbachs failed to prove an essential element of the tort, the trial court did not err in granting a directed verdict on that claim. Therefore, we overrule their second assignment of error.

### IV. Expert Testimony/Discovery

{¶32}    In their third assignment of error, the Fehrenbachs contend that the trial court erred in allowing defense experts to give new, undisclosed opinions at trial.  They argue that their testimony went well beyond the topics that Dr. O'Malley had originally stated in discovery and beyond their deposition testimony.  This assignment of error is not well taken.

{¶33}    Civ.R. 26(E) requires each party to seasonably supplement the subject matter of its experts' expected testimony.  But this rule does not require a party to give notice as to every nuance of an expert's opinion.  *Hofmeier v. Cincinnati Inst. of Plastic & Reconstructive Surgery, Inc.*, 1st Dist. No. C-000274, 2002-Ohio-188, ¶4. The decision whether to exclude discovery testimony as a sanction for a violation of Civ.R. 26(E) lies within the trial court's discretion.  The key element of the analysis is the existence of prejudice resulting from the noncompliance.  *Savage v. Correlated Health Serv., Ltd.*, 64 Ohio St.3d 42, 47, 1992-Ohio-6, 591 N.E.2d 1216; *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 84-85, 482 N.E.2d 1248; *Hofmeier*, supra, at ¶5.

{¶34}    The Fehrenbachs failed to object to some of the testimony about which they now complain, and they, therefore, waived any error.  See *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629; *Chomczynski v. Cinna Scientific, Inc.*, 1st Dist. No. C-010170, 2002-Ohio-4605, ¶21.  Further, this case "did not involve a situation where a party was completely surprised by an expert's testimony at trial or where the subject matter of the expert's testimony was revealed for the first time at trial and the opposing party had no reason to anticipate it." *Hofmeier*, supra, at ¶6.  The trial court held that the Fehrenbachs were not prejudiced because they were aware of the experts' testimony from the previous trial. Under the circumstances, we cannot hold that the trial court's decision was so

arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See *Blakemore*, supra, at 218; *Hofmeier*, supra, at ¶8. Consequently, we overrule the Fehrenbachs' third assignment of error.

### V. Basis of Expert Testimony

{¶35}   In their fourth assignment of error, the Fehrenbachs contend that the trial court erred in allowing the defense expert witnesses to use undisclosed medical literature to support their opinions. Specifically, they argue that Dr. Elias Chalhub referred to "several large studies" that supported his opinion. They argue that that testimony was improper under the rules of evidence, and that those studies were not disclosed in discovery as required by Civ.R. 26(E). This assignment of error is not well taken.

{¶36}   Previously, Evid.R. 706 had provided that learned treatises could only be used on cross-examination to impeach a witness. In 2006, that rule was repealed and Evid.R. 803(18) was enacted. The new rule allows for a learned-treatise exception to the hearsay rule. *State v. Henry*, 11th Dist. No. 2007-L-142, 2009-Ohio-1138, ¶88-89.

{¶37}   Even before those amendments, courts had allowed general references to literature in the expert's field. The Ohio Supreme Court has stated, "There is a difference between a witness's referring to specific statements in professional literature as substantive evidence and an *expert* witness's referring to the literature as being part of the basis for that expert's opinion. While the former reference would be inadmissible hearsay, numerous courts in Ohio have held that the latter reference is admissible. We agree with the decisions in those cases." *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶24 (emphasis in original).

{¶38}   Further, this court has stated, "References to studies by other experts in a particular field, however, do not automatically make the expert's testimony tainted by a learned treatise.  It is well established that experts derive much of their expertise from reading or studying the written works of others in their field; therefore, the mere acknowledgement of those studies does not necessarily bring into play the learned-treatise barrier."  *Suida v. Howard*, 1st Dist. Nos. C-000656 and C-000687, 2002-Ohio-2292, ¶15.

{¶39}   As to the argument that O'Malley failed to disclose these studies as a basis for her expert's testimony, the record shows that Chalhub had referred to those studies in his deposition.  Further, the reference to the studies was tangential to the main point of his testimony.  Finally, other experts had testified regarding the same subject matter, although they didn't refer to the studies.  The trial court has broad discretion in the admission of evidence, including expert testimony.  *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶16; *Blair*, supra, at ¶28. Under the circumstances, we cannot hold that the trial court abused its discretion in allowing the testimony into evidence, and we overrule the Fehrenbachs' fourth assignment of error.

### VI.  Jury Misconduct

{¶40}   In their fifth assignment of error, the Fehrenbachs contend that the trial court erred in denying their motion for a new trial on the basis of jury misconduct.  They argue that a juror conducted outside research and ignored the trial court's instructions.  This assignment of error is not well taken.

{¶41}   Under the aliunde rule, a jury's verdict may not be impeached by evidence from a member of the jury unless a foundation is laid by evidence aliunde.  Evidence aliunde is extraneous, independent evidence of alleged misconduct based

on the firsthand knowledge of someone who is not a juror. Evid.R. 606(B); *State v. Schiebel* (1990), 55 Ohio St.3d 71, 75, 564 N.E.2d 54; *Bentley v. Kremchek*, 1st Dist. No. C-040721, 2005-Ohio-3038, ¶3; *Wittman v. Akron*, 9th Dist. No. 21375, 2003-Ohio-5617, ¶6. Consequently, one juror's affidavit alleging the misconduct of another juror cannot be used to impeach a verdict. *Schiebel*, supra, at 75; *State v. Doan* (Sept. 29, 1995), 1st Dist. No. C-940330. The purpose of the rule is to protect the finality of verdicts and to ensure that jurors are insulated from harassment by defeated parties. *Schiebel*, supra, at 75.

{¶42} The parties in this case had stipulated that Children's Hospital's treatment of Tara "was appropriate" and the court had instructed the jury to accept that stipulation. The court had also given standard instructions that the jury should not consider outside evidence.

{¶43} The Fehrenbachs presented the affidavit of juror number one, in which he expressed a number of concerns regarding juror number five. He stated, "During the time we, the jury, were together in this trial, Juror #5 raised issues that the court instructed us were not to be considered. For example, whether Children's Hospital was liable, whether Children's should have tapped Tara's head sooner, whether certain medications should not have been given. He voiced his opinion even after the verdict that he did not know why the parties did not go after Children's since in his opinion they were at fault.

{¶44} "Juror #5 also made a number of very specific statements about the medications, particularly, 'Dexameth[a]sone.' He made comments that the drug was not appropriate and referenced the * * * [Material Safety Data Sheet] as to Dexamethasone. None of this was offered in evidence before us the jury during trial. These comments clearly originated from some source other than the evidence presented during trial.

13

{¶45} "Based upon my observations and comments of Juror #5, I can only reasonably conclude that he probably did research about this case outside of the courtroom.

{¶46} "I recall that the court had specifically instructed each member of the jury to refrain from doing any personal research outside of the courtroom during the pendency of the trial."

{¶47} In overruling the Fehrenbachs' motion for a new trial, the court indicated that the statement in the affidavit concluding that juror number five "probably did research about this case outside the courtroom is conjecture at best." We agree. It went on to state the rule that "some competent evidence extraneous and independent and from another source is an absolute requirement." It held that the aliunde rule applied, and said that it would not "invade the sanctity of the jury process in this case even though it was short of perfect."

{¶48} We agree with the trial court's reasoning. The Fehrenbachs presented no evidence aliunde of juror misconduct. Their argument rests entirely on the affidavit of another juror, which cannot be used to impeach the verdict. We note that we do not consider counsel's arguments about what he heard from jurors because those arguments were not evidence.

{¶49} The Fehrenbachs' reliance on *Doan v. Brigano* (C.A.6, 2001), 237 F.3d 722 is misplaced. In that case, the United States Court of Appeals for the Sixth Circuit held that the application of the aliunde rule in Evid.R. 606(B) violated the defendant's Sixth Amendment right to a fair trial, which includes the fundamental rights of confrontation and cross-examination. Id. at 730-731.

{¶50} We believe that this case is a narrow one, and we do not find it to be dispositive. First, it not binding on this court. Second, it is a criminal case in which the court relied on separate constitutional grounds for its decision. Finally, it

14

involved an out-of-court juror experiment. The juror reported her findings like an expert witness, yet she had not been subject to cross-examination or the rules of evidence. Id. at 733.

{¶51} In *Doan*, the Sixth Circuit Court of Appeals acknowledged the important policy considerations underlying Evid.R. 606(B). Id. at 733, quoting *Tanner v. United States* (1987), 483 U.S. 107, 119-121, 107 S.Ct. 2739. It also stated in a later case that no "constitutional impediment to enforcing" the aliunde rule exists. *Hoffner v. Bradshaw* (C.A.6, 2010), 622 F.3d 487, 501.

{¶52} The Fehrenbachs also imply that the trial court's decision not to give an instruction on "subsequent harm" somehow contributed to the misconduct. They had requested that the court instruct the jury, "If one who has suffered personal injuries by reason of another's negligence exercises reasonable care in obtaining the services of a competent physician or surgeon, and such injuries are thereafter aggravated by the negligence, mistake or lack of skill of such physician or surgeon, such aggravation is a proximate result of the negligence of the original tortfeasor, and he is liable therefore."

{¶53} But the record shows that the court and the parties discussed the instructions as a whole and agreed to the instructions that were given to the jury, which did not include the "subsequent harm" instruction. The Fehrenbachs did not object to the instructions as given, and later acknowledged that they had agreed to the instruction telling the jury about the stipulation regarding Children's Hospital. Consequently, the Fehrenbachs waived any objection. Civ.R. 51(A); *Joiner v. Simon*, 1st Dist. No. C-050718, 2007-Ohio-425, ¶62. Further, we cannot hold that the court's failure to give that instruction prejudiced the Fehrenbachs. As the trial court noted, because the jury concluded that Dr. O'Malley was not negligent, the conduct of Children's Hospital was "immaterial."

{¶54} Under the circumstances, we cannot hold that the trial court abused its discretion in overruling the Fehrenbachs' motion for a new trial on the basis of juror misconduct. See *Bentley*, supra, at ¶7. Therefore, we overrule the Fehrenbachs' fifth assignment of error.

### VII. Motion for Costs and Expenses

{¶55} Finally, in their sixth assignment of error, the Fehrenbachs contend that the trial court erred in overruling their motion for costs and expenses related to the first trial. They argue that R.C. 2323.51 empowered the court to sanction defense counsel. This assignment of error is not well taken.

{¶56} We find some appeal to this argument given defense counsel's misconduct in the previous trial. Nevertheless, the trial court correctly denied the motion because it was not timely filed. The applicable version of R.C. 2323.51(B)(1) provides that "at any time prior to the commencement of a trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * *, the court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct."

{¶57} The Ohio Supreme Court has construed the word "judgment" as used in the statute to mean a final appealable order. *Soler v. Evans*, 94 Ohio St.3d 432, 436, 2002-Ohio-1246, 763 N.E.2d 1169; *Kudukis v. Mascinskas*, 8th Dist. No. 85373, 2005-Ohio-2465, ¶10. Therefore, an aggrieved party may file a motion for sanctions within 21 days of a final judgment. *Soler*, supra, at paragraph one of the syllabus.

{¶58} Consequently, the Fehrenbachs had 21 days after the entity of judgment following the first trial in which to file their motion. While the legislature sought to provide a remedy for those harmed by frivolous conduct, it manifested its

intent "that there be a cutoff time for this sanction to be imposed." Id. at 436. To give effect to the legislative intent behind the statute, the time frame within which a motion for sanctions must be filed "cannot be perpetual." *Rogers v. Goodyear Tire & Rubber Co.*, 3rd Dist. No. 14-09-26, 2010-Ohio-194, ¶13; *Baker v. AK Steel Corp.*, 12th Dist. No. CA2005-07-188, 2006-Ohio-3895, ¶25. Consequently, we overrule the Fehrenbachs' sixth assignment of error.

### *VIII.    Summary*

{¶59}    In sum, we hold that the trial court did not err in overruling the Fehrenbachs' motions for JNOV and for a new trial. They received a fair trial, and we find no reason to overturn the jury's verdict. We overrule all six of the Fehrenbachs' assignments of error, and we affirm the trial court's judgment.

Judgment affirmed.

**HILDEBRANDT** and **SUNDERMANN, JJ.,** concur.

Please Note:

The court has recorded its own entry this date.