[Cite as *Michnowicz v. Hines*, 2012-Ohio-715.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| WILLIAM MICHNOWICZ, | : | APPEAL NO. C-110048 |
| | | TRIAL NO. A-0902904 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DANIEL J. HINES, | : | |
| Defendant-Third-Party-Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | |
| | : | |
| ROGER WELLS, d.b.a. MIKE'S CONSTRUCTION, | : | |
| Third-Party Defendant. | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed from is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 24, 2012

*James W. Costin*, for Plaintiff-Appellee,

*Joyce V. Kimbler*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

**CUNNINGHAM**, Judge.

{¶1}     Defendant-appellant Daniel J. Hines appeals from a judgment of the Hamilton County Court of Common Pleas directing a verdict for plaintiff-appellee William Michnowicz in an action for damages caused after a water pipe in Hines's condominium unit ruptured.  For the reasons that follow, we reverse the trial court's judgment.

## I.  Background Facts

{¶2}     Both Michnowicz and Hines owned condominium units at The Residences at Summit View ("the condominium.")   On December 24, 2006, a water pipe broke within Hines's unit.  The water pipe had travelled through a vanity to Hines's bathroom sink, and when it ruptured, water escaped to Hines's floor and to Michnowicz's unit below, causing damage.

{¶3}     The condominium instruments, specifically Article XI, Section 2 of the condominium's declaration, imposed upon Michnowicz and Hines, as unit owners, the responsibility to "repair and maintain" their own units and the components within their own units.  Michnowicz pursued a claim against Hines for damages under R.C. 5311.23, which provides, in relevant part, that "a * * * unit owner * * * is liable in damages in a civil action for harm caused to any person * * * by that individual's failure to comply with any lawful provision of the condominium instruments." [1]

{¶4}     At trial, Michnowicz demonstrated that the ruptured section of the water pipe had been a component of Hines's unit, and that Hines had had the

---

[1] Hines filed a third-party complaint for indemnification or contribution against Roger Wells, d.b.a. Mike's Construction, claiming that Wells had negligently installed the water pipe.  The trial court granted summary judgment to Wells after Wells demonstrated that he had not performed any of the construction work and had merely been a member of a limited liability company, now dissolved, that had performed conversion work for the owners of the apartment building.

responsibility to maintain it under the condominium's declaration. But Michnowicz did not present any evidence concerning what had caused the water pipe to fail.

{¶5} Hines offered testimony from Mark Nichting, his insurance adjuster, on the cause of the water pipe's failure, as told to Nichting by Tony Elder, the individual who had repaired the water pipe. Elder had died before the trial, and the trial court sustained Michnowicz's objection to the admission of this part of Nichting's testimony on hearsay grounds.

{¶6} Nichting was permitted to testify, however, that the water pipe had been installed in an atypical arrangement, and that Hines could not have inspected the water pipe inside the vanity cabinet without taking apart the cabinet because the installer had glued a drawer shut. Hines corroborated this later testimony, and he noted that he had no training in plumbing, suggesting that he would not have known, upon inspection, if the plumbing had been installed erroneously.

{¶7} Hines also testified that he had purchased the unit after the building had been converted from apartments to condominiums, and that he had had no notice of any leaks in his unit while living there. But Hines admitted that he had never inspected the plumbing connected to his half-bath sink.

{¶8} Both parties moved for a directed verdict at the close of all evidence. According to Michnowicz, he had conclusively established Hines's liability by demonstrating that Hines had had the responsibility to maintain the water pipe, that the water pipe had ruptured, and that he had been damaged as a result.

{¶9} Hines countered by arguing in part that he owed Michnowicz only the duty of ordinary care to maintain the water pipe and that Michnowicz had failed to demonstrate a breach of this duty and proximate cause. The trial court granted

Michnowicz's motion for a directed verdict and awarded him damages of $20,000. This appeal followed.

## II. Liability

**{¶10}** In his first assignment of error, Hines argues that the trial court erred by directing a verdict in favor of Michnowicz on the issue of liability. The trial court may grant a motion for a directed verdict only if, after construing the evidence in the light most favorable to the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). This reasonable-minds test requires the court "to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 3.

**{¶11}** The trial court's decision to grant a motion for a directed verdict involves a question of law. Accordingly, our review is de novo. Id. at ¶ 4.

**{¶12}** Initially, Hines complains that the trial court did not clearly state the grounds for the directed verdict. Thus, before we can address whether the evidence met the standard for a directed verdict, we must first determine the theory that Michnowicz prevailed upon.

**{¶13}** Michnowicz contends that the trial court found in his favor because it determined, after reviewing all the evidence, "that [Hines] was in 'exclusive control' of his unit, it was [Hines's] duty to maintain the components of his unit, the water pipe in [Hines's] unit failed, and [Michnowicz] was damaged as a result." He also states that Hines had a "duty to maintain the water system so that it [did] not cause damage whether the failure results from lack of maintenance or inspection or the

4

actions of a third party." Although Michnowicz does not use the words "absolute liability" to characterize the standard underlying his theory of recovery, we can only conclude that "absolute liability" is what he means.

{¶14} Moreover, we conclude that the trial court imposed absolute liability based on the failure of the water pipe and that the court did not impose liability based on Hines's violation of the duty to maintain, as set forth in the declaration. In explaining its decision to remove the case from the jury, the court stated the following:

> Basically, in this particular case, the plaintiff is a sitting duck. * * * [I]t is only fair that the upper dominant landowner who had exclusive control over this situation, within his own unit, within his own vanity, and the fact that it is, shall I say glued to the pipes, is of * * * no concern. His testimony was that yes with a hammer, I could have taken this vanity out. I can see my own pipes. It's his responsibility. He could have taken it off. And he, the defendant * * * will be held liable for any and all damages caused by the flow of water.

{¶15} We are unable to agree, however, with Michnowicz and the trial court, that the condominium association's instruments and R.C. 5311.23(A) give rise to a cause of action in absolute liability against a condominium unit owner for property damage to other units caused by the failure of a component for which the owner had the responsibility to maintain.

## A. Ohio's Condominium Act

{¶16} Our analysis of this issue begins with a short summary of the condominium as a form of real property. Condominium ownership is a statutory creation. *See* R.C. Chapter 5311 (codifying Ohio's Condominium Act and its amendments).

{¶17} Under the unique condominium "regime," real estate is divided into separate spaces, known as "units." Kuehnle and Williams, *Ohio Condomium Law*, Section 1:1, at 1 (2011); *see also* R.C. 5311.03. The owners of the units also own an undivided interest as tenants in common with all of the other owners of units in the "common elements," which is generally comprised of the remainder of the property that is not within one of the units. Id.

{¶18} All owners of units in a condominium property belong to the condominium's "[u]nit owners association." R.C. 5311.01(DD). This association "administers" the condominium property. Id.; R.C. 5311.08(A)(1). The condominium instruments set forth the plan for condominium ownership of the property, including defining the unit and its components and the maintenance and repair responsibilities of the association and the unit owner. *See* R.C. 5311.01(M).

{¶19} The statutory section that Michnowicz relies upon in his claim for relief, R.C. 5311.23(A), provides that "a declarant, developer, agent, or **unit owner** or any person entitled to occupy a unit **is liable in damages in a civil action for harm caused to any person or to the unit owners association by that individual's failure to comply with any lawful provision of the condominium instruments**." (Emphasis added.) Subdivisions (B) and (C) of R.C. 5311.23 generally provide a statutory right to a declaratory judgment action to determine legal rights under the condominium instruments or to obtain an injunction, and a statutory right to a class action by unit owners. Subdivision (D)

authorizes the unit owners association to bring an action under the section "in its own name, in the name of the board of directors, or in the name of the association's managing agent."

### B. The Condominium's Instruments

{¶20}  "The Declaration for the Residences at Summit View Condominium" is part of the condominium's instruments.  *See* R.C. 5311.01(M).  Article XI of that declaration reads as follows:

> Section 1. Association Responsibility. The Association shall maintain and repair the Common Areas, including and not limited to utility facilities serving more than one (1) Unit, utility lines in the Common Areas, lawns, shrubs, trees, walkways, the balconies, and all the buildings which are part of the Common Areas, provided, however, that the Association shall not be required to perform normal cleaning of the individual unit balconies.
>
> Section 2.  Individual Responsibility. Each Unit Owner shall repair and maintain the Unit or Units, and all components thereof, owned by that Unit Owner, and the balconies appurtenant to a Unit to the extent not the obligation of the Association.  Without limiting the generality of the foregoing, this repair and maintenance responsibility shall include repair and maintenance of all windows, screens and doors, including the frames, sashes and jambs, and the hardware therefor; and

cleaning of the balconies. In the event a Unit Owner shall fail to keep such balcony area clean, or in the event the need for maintenance or repair of any part of the Common Areas or Limited Common Areas is caused by the negligent or intentional act of any Unit Owner or Occupant, and the cost of repair is not covered by insurance, the cost of such maintenance and repair shall constitute a Special Individual Unit Assessment, as hereinafter defined, on the Unit owned by such Unit Owner. The determination that such maintenance or repair is necessary, or has been so caused, shall be made by the Board.

{¶21} Upon our review, we hold that the trial court erred by interpreting Article XI, Section 2 and R.C. 5311.23(A) to impose on Hines absolute liability for any damages to Michnowicz caused by the failure of a component in Hines's unit that Hines had the responsibility to maintain. Article XI, Section 2 merely sets forth the responsibility of the owner to maintain the unit and its components, but it does not define the scope of the duty to maintain.

{¶22} And R.C. 5311.23(A) simply subjects unit owners to statutory liability to others for damages **caused by the failure to comply** with a provision of the association's instruments. The trial court effectively eliminated this element of proximate cause. Further, R.C. 5311.23(A) does not define a standard of care for the underlying violation of a provision, and we do not believe the General Assembly intended it to.

{¶23} Thus, to prevail on his cause of action under R.C. 5311.23(A), Michnowicz must establish (1) Hines's responsibility to maintain the water pipe under Article XI, Section 2 of the condominium declaration, (2) Hines's failure "to maintain" it, as contemplated by this provision, (3) and an injury proximately caused by this failure to comply with this provision.

{¶24} The trial court erred by applying an absolute liability standard. And, even if the trial court had applied the correct rule, we hold that the evidence would not have support a directed verdict in favor of Michnowicz. *See* Civ.R. 50(A)(4). Accordingly, we sustain the first assignment of error.

### III. Damages

{¶25} In his second assignment of error, Hines argues that the trial court applied the wrong measure of damages. This assignment of error is rendered moot by our disposition of the first assignment of error, and we decline to address it. *See* App.R. 12(A)(1)(c).

{¶26} Accordingly, we reverse the judgment of the trial court, and we remand the case for further proceedings in accordance with law and consistent with this decision.

Judgment reversed and cause remanded.

**HENDON, P.J.**, and **FISCHER, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this decision.