[Cite as *Kemper v. Springfield Twp.*, 2012-Ohio-2461.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PATRICK JOHN KEMPER, | : | APPEAL NOS. C-110514 |
| | | C-110546 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. A-0808482 |
| | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| SPRINGFIELD TOWNSHIP, OHIO, | : | |
| | : | |
| Defendant-Appellant/Cross-Appellee. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Final Judgment Entered

Date of Judgment Entry on Appeal:  June 6, 2012

*Freking & Betz, LLC, Randolph H. Freking,* and *Katherine Daughtrey Neff,* for Plaintiff-Appellee/Cross-Appellant,

*Schroeder, Maundrell, Barbiere & Powers* and *Lawrence E. Barbiere,* for Defendant-Appellant/Cross-Appellee.

**HILDEBRANDT, Presiding Judge.**

{¶1} Defendant-appellant/cross-appellee Springfield Township, Ohio, appeals the judgment of the Hamilton County Court of Common Pleas awarding damages to plaintiff-appellee/cross-appellant Patrick John Kemper on Kemper's claims under the Family and Medical Leave Act, 29 U.S.C. 2601 et seq. (the "FMLA"). Those damages were awarded following a jury trial. In his cross-appeal, Kemper challenges the trial court's reduction of the damages based upon his receipt of payments that the trial court characterized as collateral benefits.

{¶2} On September 9, 2008, Kemper filed a complaint alleging age discrimination under R.C. Chapter 4112, violations of the FMLA, defamation, and breach of public policy. Kemper voluntarily dismissed the defamation claim, and the trial court granted summary judgment in favor of the township as to the public-policy claim. The court denied summary judgment as to the remaining causes of action, and the case proceeded to trial.

### The End of Kemper's Employment

{¶3} Kemper was hired by the township in 1981 and became a patrolman in the police department in 1982. He was promoted to the rank of detective in 1988.

{¶4} During his tenure with the township, Kemper took a number of extended leaves of absence for his own medical conditions and for his wife's illnesses. Kemper did not explicitly request that any of the absences be characterized as FMLA leave, and on each occasion, the absences were designated as sick leave.

{¶5} Township law director Laura Abrams testified that, if an employee had remaining accrued sick time when he took a leave of absence, the township would designate the leave as sick time and that eligible FMLA time would run

concurrently with the sick leave. According to Abrams, this policy was intended to benefit the employee, because sick time was paid leave, whereas FMLA leave was unpaid.

{¶6} The township police department had a formal policy restricting outside employment. Under the policy, employees were required to submit a written request and receive written permission before engaging in outside work. In late 2007, Kemper began discussing a possible business venture with two fellow township officers. The three men planned to start a business installing security systems and providing lie-detection services. In December 2007, the business was incorporated as Trident Security Solutions LLC. The corporation had a website and by early 2008 had obtained a bid to provide a security system for a synagogue.

{¶7} Kemper discussed the security business with his supervisor, Chief David Heimpold, in December 2007. Heimpold said that such a business would be possible but that there would have to be restrictions to prevent any conflict with police operations.

{¶8} On March 7, 2008, Kemper submitted a letter to Heimpold about the outside business. In his letter, he stated, "Per the verbal conversation and consent given to Pat Kemper, we respectfully submit our request [to operate Trident] in writing as required by policy." Heimpold called Kemper into his office and told him that the letter was false, because Heimpold had never given consent to Kemper to operate the business. Kemper admitted that the letter was false and left work, citing depression, stress, and high blood pressure as his reasons. Kemper remained on leave through March 12, 2008, and that leave was designated as sick time.

{¶9} After Kemper had left work, Lieutenant David Schaefer visited him at his home and gave him the opportunity to revise his letter. Kemper amended the letter to state, "Per the verbal conversation with Pat Kemper stating that you did not

see a problem with this business, we respectfully submit our request in writing as required by policy." Although Heimpold indicated that the amended letter was less problematic than the original, he nonetheless felt compelled to consider an internal investigation based on the contents of the letter as originally submitted.

{¶10}    On March 12, 2008, Heimpold asked Kemper to meet with him and township administrator Michael Hinnenkamp at the township office building to discuss Kemper's options in light of the alleged dishonesty contained in the original letter. At the meeting, Hinnenkamp emphasized the serious nature of a charge of dishonesty and stated that Kemper would face a rigorous internal investigation. Hinnenkamp further noted that the township had terminated for dishonesty in the past. According to Kemper, Hinnenkamp also stated that termination would be likely in his case. Kemper testified that, faced with the prospect of being terminated and losing his pension and other benefits, he elected to retire. He submitted his notice of retirement on March 13, 2008.

{¶11}    Kemper asserted a number of theories of recovery under the FMLA: (1) that the township had retaliated against him for his exercise of his FMLA rights; (2) that he had been constructively discharged and that the discharge had interfered with his FMLA rights; (3) that he had been wrongfully required to meet with Heimpold and Hinnenkamp while on FMLA leave; and (4) that the township's designation of his leaves of absence as sick time rather than as FMLA leave had interfered with his statutory rights. The jury rejected the first theory of recovery, but concluded that Kemper had been constructively discharged and that the township had interfered with Kemper's FMLA rights. It further found that the township's violation of the FMLA had been willful. The jury found in favor of the township on Kemper's age-discrimination claim.

{¶12} The jury awarded Kemper a total of $491,000, which included back pay, front pay, and statutory liquidated damages equal to the back-pay award. The trial court subsequently deducted from the damage award certain items that the court deemed to be "collateral benefits." Those benefits included the amounts that Kemper had received from the state retirement system. Following those deductions, the total damage award was $177,472.64, in addition to attorney fees and costs in the amount of $102,216.

{¶13} The trial court overruled the township's motions for a directed verdict, its motion for judgment notwithstanding the verdict, and its motion for a new trial. These appeals followed.

### Sufficiency of the Evidence

{¶14} In its first assignment of error, the township contends that the trial court erred in overruling its motions for a directed verdict and its motion for judgment notwithstanding the verdict.

{¶15} Under Civ.R. 50(A)(4), a trial court may grant a motion for a directed verdict only if, after construing the evidence in a light most favorable to the party against whom the motion is directed, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party. *Michnowicz v. Hines,* 1st Dist. No. C-110048, 2012-Ohio-715, ¶ 10. Under Civ.R. 50(B), the standard for granting or denying a motion for judgment notwithstanding the verdict is the same as that for a motion for a directed verdict. *Fehrenbach v. O'Malley,* 1st Dist. No. C-110730, 2011-Ohio-5481, ¶ 26. An appellate court reviews de novo a trial court's ruling on motions for a directed verdict and for judgment notwithstanding the verdict. *Eysoldt v. Proscan Imaging,* 194 Ohio App.3d 630, 2011-Ohio-2359, 957 N.E.2d 780, ¶ 18 (1st Dist.).

{¶16}     Under the FMLA, a qualified employee is entitled to take up to 12 weeks of unpaid leave during a one-year period for the employee's illness or to care for a relative. *See* 29 U.S.C. 2601 et seq.; *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 1. To establish an FMLA interference claim, the plaintiff must establish that (1) the plaintiff is an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the plaintiff was entitled to take leave under the FMLA; (4) the plaintiff gave the employer notice of his intention to take leave under the FMLA; and (5) the defendant denied the plaintiff FMLA benefits to which he was entitled. *Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir.2005). To prove the fifth element, the plaintiff must demonstrate that the employer took an employment action based, in whole or in part, on the employee's exercise of his FMLA rights. *Wysong v. The Dow Chemical Co.,* 503 F.3d 441, 447 (6th Cir.2007).

{¶17}     It was undisputed in this case that the first two elements were met. And in discussing Kemper's theories of recovery, we assume, for purposes of discussion only, that Kemper had been eligible for FMLA benefits with respect to his various leaves of absence and that he had placed the township on notice of his intent to take leave under the statute. Accordingly, our discussion focuses on the fifth element of the interference claims.

### Adverse Employment Action: Constructive Discharge

{¶18}     We begin with Kemper's contention that he was constructively discharged and that the constructive discharge interfered with his FMLA rights.

{¶19}     To prove a claim of constructive discharge, an employee must demonstrate that his former employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. *Thomas v. Cohr, Inc.,* 1st Dist. No. C-110094, 2011-Ohio-5916,

¶ 15, citing *Wille v. Hunkar Laboratories, Inc.,* 132 Ohio App.3d 92, 106, 724 N.E.2d 492 (1st Dist.1998) and *Mauzy v. Kelly Servs.,* 75 Ohio St.3d 578, 664 N.E.2d 1272 (1996), paragraph four of the syllabus. The inquiry is whether the employer's actions would have made a reasonable person believe that termination was imminent. *Mauzy* at 589. The test is an objective one, and an employee's belief that he was compelled to resign must be judged without consideration of his "undue sensitivities." *Risch v. Friendly's Ice Cream Corp.,* 136 Ohio App.3d 109, 112-113, 736 N.E.2d 30 (1st Dist.1999), quoting *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 515 (6th Cir.1991).

{¶20}    In the case at bar, the jury's conclusion that Kemper had been constructively discharged was in accordance with the evidence. In discussing Kemper's options, Hinnenkamp let it be known that any disciplinary proceeding would in all likelihood end in termination and that Kemper would lose his pension and other benefits. As he told Kemper, he "didn't see a way out" of the internal investigation, and the reminder that other officers had been terminated for dishonesty emphasized that Kemper's employment situation was dire.

{¶21}    It is true, as the township states, that neither Hinnenkamp nor Heimpold had the ultimate authority to terminate Kemper and that such authority rested in the township trustees. But both men were in a supervisory position, and Kemper did not act irrationally in accepting their assessment of his predicament. And while the township stresses that Kemper would have been entitled to a full disciplinary proceeding with all of the attendant due process protections, there was evidence that Kemper had reasonably believed termination to be a foregone conclusion.

**Constructive Discharge and Interference with FMLA Rights**

{¶22} But our inquiry does not end with the conclusion that Kemper produced sufficient evidence with respect to the alleged constructive discharge. A plaintiff must also establish a connection between the exercise of FMLA rights and the adverse employment action. In the context of an FMLA-interference claim, an employee may be lawfully dismissed "if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. West Publishing Corp.,* 345 F.3d 390, 401 (6th Cir.2003). As the *Arban* court emphasized, an employee "who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." *Id.*, quoting *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1262 (10th Cir.1998).

{¶23} A recent case from the Ninth Appellate District illustrates the plaintiff's burden to demonstrate that the challenged employment action was related to FMLA leave. In *Kelsh v. WCI Steel, Inc.,* 9th Dist. No. 2011-T-0006, 2012-Ohio-403, an employee was injured at work. Despite the employer's light-duty program, the employee chose to take leave. *Id.* at ¶ 7. But contrary to the employee's claim that he was unable to work because of the injury, a private investigator observed the employee performing strenuous tasks away from the workplace. *Id.* at ¶ 8. The employee completed a worker's-compensation form for total temporary disability stating that he had not worked in any capacity and that the employer had not provided light-duty work. *Id.* at ¶ 10.

{¶24} The employee was discharged for dishonesty and sued the employer, arguing that the employer had retaliated against him for exercising his rights under the FMLA and had interfered with his exercise of those rights. *Id.* at ¶

14. The case proceeded to trial, and the jury returned a verdict in favor of the employer. *Id.* at ¶ 15.

{¶**25**}    In holding that the defense verdict was proper, the *Kelsh* court noted that the FMLA "does not provide for strict liability for interfering with an employee's FMLA rights." *Id.* at ¶ 35. Accordingly, the court concluded that "[a]lthough Kelsh was on leave at the time of his termination, [the termination] was due to Kelsh's own actions in dishonestly filling out the form for temporary total benefits, which he knew was against the policy of WCI as stated in its handbook." *Id.* at ¶ 37.

{¶**26**}    We find the reasoning of *Kelsh* to be persuasive in the case at bar. Kemper simply produced no evidence that the township's decision to initiate the internal investigation had any relationship to his exercise of his FMLA rights. On the contrary, the uncontradicted evidence was that township readily agreed to Kemper taking leave for his stress and hypertension immediately after he was questioned about the letter. Similarly, there was no evidence that the township had demonstrated any resistance to Kemper's prior leaves of absence.

{¶**27**}    Rather, as in *Kelsh*, all of the evidence demonstrated that Kemper's acknowledged dishonesty was the basis for the challenged discharge. There was no threat of discipline prior to the letter submitted to Heimpold and no indication in the record that Kemper's absences—or the conditions that led to those absences—bore any relationship to the adverse employment action. Thus, even though Kemper was on leave at the time of the asserted adverse employment action, he failed to demonstrate that he was wrongfully denied any rights under the FMLA.

### The Meeting to Discuss Kemper's Options

{¶**28**}    We next address Kemper's assertion that the meeting called by Heimpold and Hinnenkamp on March 12, 2008, interfered with the exercise of his

FMLA rights. We agree with the township that the meeting did not constitute an interference with Kemper's statutory rights.

{¶29} A voluntary meeting to discuss work-related issues during a period of FMLA leave does not constitute a violation of the statute. *See, e.g., Grindstaff v. Sun Chemical Corp.,* S.D.Ohio No. 1:09-cv-450, 2010 U.S.Dist. LEXIS 123426 (Nov. 22, 2010). In fact, it has been held that even requiring an employee to field telephone calls and perform other administrative tasks while on FMLA leave does not violate the statute. *See Reilly v. Revlon, Inc.,* 620 F.Supp.2d 524, 537 (S.D.N.Y.2009), citing *Kesler v. Barris, Sott, Denn & Driker, PLLC,* 482 F.Supp.2d 886, 910-911 (E.D.Mich.2006).

{¶30} In the case at bar, it was undisputed that the March 12 meeting was voluntary. It was also uncontested that Kemper did not work during the meeting and was not asked to perform any official duties. Under these circumstances, Kemper failed to present sufficient evidence that the meeting interfered with his FMLA rights.

### The Township's Policy of Designating Leave as Sick Time

{¶31} Finally, we address Kemper's assertion that the township's policy of designating his leaves of absence as paid sick time instead of unpaid FMLA leave violated the statute.

{¶32} Regulations promulgated under the FMLA specifically permit the designation of leave as paid sick time even though the employee might also be eligible for FMLA leave. In that regard, 29 C.F.R. 825.207(a) provides the following:

Generally, FMLA leave is unpaid leave. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. If an employee does not

choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave.

*See also Allen v. Butler Cty. Commrs.*, 331 Fed.Appx. 389, 393 (6th Cir.2009).

{¶33} The Supreme Court of the United States has noted that while FMLA leave is unpaid, "the Act encourages businesses to adopt more generous policies, and many employers have done so." *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 84, 122 S.Ct. 1155, 152 L.Ed. 167 (2002). The court further observed that Congress specifically permitted more generous policies provided that they comply with the minimum requirements of the statute. *Ragsdale* at 87, citing 29 U.S.C. 2653.

{¶34} In the case at bar, the township provided a more generous policy than required under the FMLA. Such a policy was proper under the statute, and Kemper failed to demonstrate any damages to have resulted from the policy. On the contrary, the designation of paid leave inured to Kemper's benefit in providing payment during his leaves of absence. Thus, contrary to Kemper's assertion, the township's policy did not impermissibly "discourage" the taking of FMLA leave or any other kind of leave. It merely took steps to ensure that an employee who took leave would receive compensation. The policy, therefore, did not violate the FMLA.

{¶35} In sum, Kemper failed to produce sufficient evidence to demonstrate, under any of his theories of recovery, that the township had violated the FMLA. Accordingly, we hold that reasonable minds could come to but one conclusion regarding the FMLA claims, and that conclusion was adverse to Kemper. Although Kemper also contends that the trial court erred in denying his motion for summary judgment, our holding with respect to the trial evidence renders that argument moot. We sustain the first assignment of error.

**Motions for a New Trial and for a Mistrial**

11

{¶36}    In its second and third assignments of error, respectively, the township contends that the trial court erred in overruling its motion for a new trial and in overruling its motion for a mistrial on the basis of improper jury instructions. Because the township was entitled to judgment as a matter of law, these remaining assignments of error are moot. Therefore, we need not address them on their merits.

### Kemper's Cross-appeal

{¶37}    In his cross-appeal, Kemper asserts a single assignment of error. He contends that the trial court erred in reducing the jury award based upon his receipt of pension benefits and other payments, which the court characterized as "collateral" benefits. But because we have held that Kemper proved no liability on the part of the township, Kemper's assignment of error is also moot.

### Conclusion

{¶38}    Accordingly, we reverse the judgment of the trial court and enter judgment in favor of the township on each of Kemper's claims.

Judgment reversed and final judgment entered.

**SUNDERMANN** and **DINKELACKER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

12